ESTATE OF McKENZIE: HAVITZ, Administrator, Appellant,
vs. McKENZIE, Respondent.

*September 12—October 10, 1939.*

426

For the appellant there was a brief by *R. L. Grover* of Junction City, attorney, and *Fisher, Cashin & Reinholdt* of, Stevens Point of counsel, and oral argument by *Mr. Richard T. Reinholdt* and *Mr. Grover*.

*R. W. Monk* of Wausau, for the respondent.

FOWLER, J. The parties to the suit have assumed that because the premises involved were located in the village of Dancy the homestead of the deceased was limited to one fourth of an acre in extent, and have entirely omitted consideration of a statute which in our view controls the one-fourth-acre limitation of homesteads to cities and incorporated villages. Sub. (33) of sec. 370.01, Stats., which lays down the rules for the construction of statutes, reads:

"The word 'village' imports only a municipal corporation organized by some special act or under some general law, except when a different definition shall be expressly given to the same."

The homestead statute here involved is that standing in the statutes of 1933 as sec. 272.20 (1). There was an amendment of the statute in 1935 which dropped the words

"city or village," but that amendment did not take effect until January, 1936.   See *Roche v. Du Bois,* 223 Wis. 438, 445, 271 N. W. 84.   The word "village" was in the statute at the time of McKenzie's death and the homestead to be selected by the widow is that existing at that time.   Sec. 272.20 (1), Stats. 1933, so far as it relates to acreage, reads:

"A homestead to be selected by the owner thereof consisting, when not included in any city or village, of any quantity of land, not exceeding forty acres, used for agricultural purposes; and when included in any city or village of any quantity of land not exceeding one fourth of an acre and the dwelling house thereon and its appurtenances owned and occupied by any resident of this state."

Taking sec. 370.01 (33), Stats., as it stands, it imports that the word "village" in sec. 272.20 (1) means "incorporated village," and Dancy being unincorporated, a homestead therein is not limited to one fourth of an acre.   While the widow cannot complain that she was limited to one fourth of an acre in her selection, for she got what by her petition she asked for, and she is not appealing, yet that land in excess of one fourth of an acre might have been selected, if such is the law, has indirect bearing on the validity of the order appealed from.

There are no cases directly deciding whether the word "village" in the homestead statute is limited to incorporated villages.   In the early case of *Casselman v. Packard,* 16 Wis. *115, it is stated that the property was in the village of Sparta, and that the homestead involved did not exceed one-fourth acre in extent.   Sparta was not incorporated until 1866, as the record in the secretary of state's office of which we take judicial notice, shows.   The case was decided in 1862.   The word "village" was in the homestead act at the time the case was decided.   It was manifestly then the view of the court that the word "village" in the statute applied to

unincorporated villages. But this has little, if any, bearing on its meaning in the instant statute because in R. S. 1849 and 1858, the clause "not included in any city or village" read "not included in *any town plot,* or city or village." Sec. 51, ch. 102, R. S. 1849; sec. 23, ch. 134, R. S. 1858. Plotted land, if not in an incorporated village or city, was thus subject to the one-fourth-acre limitation when the Sparta case was decided. The change to the language of the homestead statute first occurs in R. S. 1878, sec. 2983. It is said in the revisers' notes to sec. 2983, R. S. 1878:

"We have omitted the words 'town plot' in this section, as it would seem to be not in accordance with the spirit of the exemption to prohibit a man from having a homestead in the country composed of forty acres and for agricultural purposes, simply because the same may have been plotted into lots, blocks and streets, for his convenience of making sales of portions thereof."

The words "town plot" would cover lands in an unincorporated village, as a plot must lie in some governmental subdivision, and unincorporated villages are comprised in towns.

It seems clear that the intent and effect of dropping the words "town plot" from the homestead statute was to extend the homestead acreage in unincorporated villages to forty. The dropping of the words adds force to the reason given in *Roche v. Du Bois, supra,* for holding that forty acres of land outside of villages and cities may be included in a homestead regardless of its use for strictly "agricultural purposes." It is there stated on the authority of *Binzel v. Grogan,* 67 Wis. 147, 29 N. W. 895, that the word "agricultural" in the homestead statute was used merely to distinguish rural from city or village property.

It is to be noted that sub. (33) of sec. 370.01, Stats., first occurs in R. S. 1878, in sub. (5) of sec. 4972. The revisers'

notes disclose no connection between sub. (5) and the dropping of "town plot" from the homestead statute, but the enactment of sub. (5) is entirely consistent with the amendment of that statute.

From the above it appears that the deceased husband's homestead was not limited to one fourth of an acre, and the widow might have selected as that homestead the entire tract consisting of lots 3 and 2, as far as acreage is concerned. Two stipulated facts not above mentioned have some remote bearing on what was considered as constituting the deceased's homestead. One is that the deceased and his wife included both lots 3 and 2 in a mortgage to secure payment of $2,000. The other is that the wife signed with the deceased a note which was filed as a claim against the deceased's estate on which judgment was entered. She was sued on this note, and judgment thereon was entered against her. To prevent subjecting lot 3, title to which passed to her on her husband's death, to satisfaction of that judgment, the widow petitioned the circuit court to have all of lots 3 and 2 established as her homestead, free from the lien of the judgment against her, on the theory that the quarter-acre homestead limitation did not apply to the property because it was rural as distinguished from urban property. A quarter of an acre in lot 3, block 1, to be selected by her, which should include "the dwelling house and its appurtenances thereon located, as and for her homestead, free and clear of all liens of judgments against her, or her deceased husband," was adjudged by the circuit court to be the widow's homestead. It was manifestly because of the ruling of the circuit court that the wife's homestead was limited to one fourth of an acre that she limited her selection of the husband's homestead in her instant petition to one fourth of an acre, and that she would have claimed the whole of the two tracts as the husband's homestead but for that judgment. If all of lot 2 was included in the homestead of the husband at the time of his death, the part in-

cluded therein by the instant judgment was properly therein included.

The question remains whether, the land not being within a city or village, within the meaning of the homestead statute, the stipulated facts show that lot 2 constituted a part of the homestead of the deceased at the time of his death. Referring to the portion of the statute here material above quoted, it is to be noted that the statute says nothing about appurtenances to the dwelling house so that the exclusion of the outhouses does not invalidate the selection when the land is not within a city or village. As the widow had the right to include the outbuildings in the homestead selected by her, their exclusion from the description because of her erroneous view of the law is without bearing on what the homestead of the deceased actually was. If the land were in an incorporated village the case of *Schoffen v. Landauer,* 60 Wis. 334, 19 N. W. 95, would perhaps be controlling, as held by the circuit court in the proceedings before that court. But being entitled to any tract less than forty acres that case is beside the point. If a dwelling house in the country were on one forty-acre governmental subdivision, and all appurtenant outbuildings on another, the owner could doubtless select as his homestead the forty-acre tract on which his dwelling house was situated, and abandon his outbuildings. No one but the widow and heirs was prejudiced by her exclusion of the outbuildings in the selection here made. The premises selected must, of course, be accepted as a homestead by the owner, or if he is absent therefrom the absence must be only temporary with intention to return and occupy them as a homestead. "The chief characteristic or attribute of the 'homestead,' therefore, is—what indeed the word itself implies—that is the land where is situated the dwelling of the owner and family." *Bunker v. Locke,* 15 Wis. *635, *638. The widow could not, of course, select as part of the homestead land apart from the dwelling house, but the dwelling house and the

whole of lots 3 and 2 were occupied by the deceased and lots 3 and 2 consist of adjacent parcels of land and constitute a compact body.

It is contended that the conducting of the business upon lot 2 by the deceased prevents the widow from selecting it as a part of the homestead. The homestead statute must be liberally construed in favor of the debtor. *Weisbrod v. Daenicke,* 36 Wis. 73. Such has been its construction from the earliest days of our statehood. Thus, it is said in *Casselman v. Packard, supra* (p. *116), that "in addition to the dwelling, a person perhaps might erect a small shop, or building of that character, on the lot, which he himself used and occupied for the purpose of his trade or business." The dance building on lot 2 is not perhaps a "small building"—it is slightly larger than the dwelling house, being less than thirty feet in width and about fifty feet in length, while the dwelling house is thirty by forty feet, but it is not beyond the limits of a shop, and it was occupied by the deceased himself for the purpose of his trade or business. This idea was the basis of holding as part of a homestead a building at the rear of a city lot, in the front of which was a dwelling house occupied by the owner, the first story of which rear building was occupied as a garage by the owner for the keeping of an automobile and a truck used in his business as a plumber and the upper story of which was rented to tenants. *Will of Bresnehan,* 221 Wis. 51, 265 N. W. 93. The conduct of a hotel business in the building in which the owner resided, and the renting of cottages adjacent to the cottage occupied by the owner and his family as a dwelling, were held not to deprive the properties of their character as homesteads. *Harriman v. Queens Ins. Co.* 49 Wis. 71, 5 N. W. 12; *Roche v. Du Bois, supra.* The case of *In re Shepardson* (D. C.), 28 Fed. (2d) 353, was cited in *Roche v. Du Bois, supra,* as supporting the proposition that the rented cottages were included in the homestead of Du Bois. In the *Shepardson Case,* two

parcels on opposite sides of the road were adjudged a homestead, on one of which was a house in which the owner resided and on the other were a building used by him for the sale of merchandise and gasoline, a barn, and a small house, and nine cabins which were rented to tourists.

The limitation of homesteads to premises of $5,000, or less value, which was enacted into the homestead statute by ch. 269, Laws of 1901, is not without bearing. It expresses the legislative intent to exempt property up to that value. One person is entitled to exemption of property of that value as well as another, and upon reason should be so entitled regardless of the manner in which he uses the property if he resides thereon with his family, if he has a family. The instant property is of less than that value, and the deceased lived thereon with his family up to the time of his death.

We are of opinion that the use made by the deceased of the property on lot 2 is consistent with the previous decisions of the court above cited, with the idea expressed by the state constitution, sec. 17, art. I, that "the privilege of the debtor to enjoy the necessary comforts of life shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability hereafter contracted," and with the legislative declarations as to the value of the homestead exempted.

It follows that the order of the county court should be affirmed, although its basic reason was erroneous.

*By the Court.*—The order of the county court is affirmed.